**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | |
|---|---|
| PAUL D. BALMERT and BALMERT CONSULTING, LLC, | |
| *Plaintiffs*, | Civil Action No. |
| v. | |
| PHILLIPS 66 COMPANY, | **JURY** |
| *Defendant*. | |

## ORIGINAL COMPLAINT

Plaintiffs Paul D. Balmert and Balmert Consulting, LLC, by and through their undersigned counsel, complain against Philipps 66 Company as set forth herein.

## NATURE OF THE CASE AND JURISDICTION

1.  This is an action for copyright infringement under Title 17 of the United States Code.

2.  This Court has subject matter jurisdiction over the claims alleged in this action under 28 U.S.C. §§ 1331, 1338.

## THE PARTIES

3.  Plaintiff Balmert Consulting, LLC is a limited liability company organized under the laws of the state of Texas, and having a principal place of business in Seabrook, Harris county, Texas.

4.   Plaintiff Paul D. Balmert is an individual residing in Seabrook, Harris county, Texas.  Mr. Balmert is the sole member of Balmert Consulting, LLC.  Prior to forming Balmert Consulting, LLC, Mr. Balmert operated as a sole proprietorship under the business name Balmert Consulting.

5.   Mr. Balmert, Balmert Consulting, and Balmert Consulting, LLC (collectively, Balmert) offered and offer global management consulting services, including training products and services designed to achieve a sustainable improvement in execution in operations.  Balmert has trained over 75,000 line leaders, from front line supervisors and managers to vice presidents, division presidents, presidents, and CEO's, and provided services on six continents, in five different languages, in a wide range of industries.

6.   Defendant Phillips 66 Company ("Defendant" or "Phillips 66") is a Delaware corporation headquartered in Houston, Texas.  Phillips 66 processes, transports, stores and markets fuels and related products globally and has approximately 14,300 employees.  Phillips 66 may be served with process through its registered agent Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

## PERSONAL JURISDICTION AND VENUE

7.   This Court has personal jurisdiction over Phillips 66 at least because it is headquartered in this judicial district and does business within this judicial district, including, but not limited to, operating one or more refineries in this judicial district.

8.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and 1400(a) because Phillip 66 resides or may be found  in this judicial district.  Venue also is proper under 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events, acts or omissions giving rise to the claims, including acts of infringement, occurred in this judicial district, and Balmert has been injured in this judicial district, as well as other locations, by Phillips 66's wrongful acts.

## FACTS COMMON TO ALL COUNTS

### The Fundamentals of Process Troubleshooting

9.  In 2001, after spending thirty years working in the chemical industry, Mr. Balmert started a consulting practice. During that first year, he began developing two training programs for managing operating staff in the chemical industry, such as at refineries.

10. The first program Mr. Balmert began developing was a training course to teach supervisors and managers how to manage safety performance, which he titled "*Managing Safety Performance*." To date, the *Managing Safety Performance* training course has been taught thousands of times throughout the world and is widely recognized as the best safety leadership course in the world. The client list includes a wide selection of industries and businesses, particularly in the oil and gas industry. Conoco Phillips, a predecessor to defendant Phillips 66, retained Mr. Balmert and his team to train its supervisors and managers using the *Managing Safety Performance* materials he developed.

11. The second program that Mr. Balmert began developing was focused on teaching operating staff in chemical processing facilities, such as operating staff at refineries, how to troubleshoot technical problems. Mr. Balmert studied real life cases, and real life practitioners, and from that review he created his REACT model of troubleshooting.

12. Over the course of 2002 and 2003, Mr. Balmert authored the training manual titled *The Fundamentals of Process Troubleshooting.* The training manual was completed in 2003 (hereafter, "2003 FOPT Manual"). The 2003 FOPT Manual was first used to teach a troubleshooting course at the Humble Civic Center, Harris county, Texas, in July 2003. The basic 2003 FOPT Manual was used to teach various troubleshooting courses over the ensuing years, and in 2008 Mr. Balmert completed an update of the 2003 FOPT Manual (hereafter "2008 FOPT

Complaint
Against Phillips 66

Manual").  The 2008 FOPT Manual was thereafter used to teach the Balmert troubleshooting courses.

13. Balmert typically charged either a flat fee of around about $14,000 for a *Fundamentals of Process Troubleshooting* two-day course, or a per attendee fee of up to about $750.  Regardless of how charged, each attendee was provided a hard copy of the FOPT Manual.

14. Mr. Balmert is the owner of U.S. Copyright Registration No. TX 8-888-183 for the 2003 FOPT Manual, a true and accurate copy of which is attached as Exhibit A.

15. Mr. Balmert is the owner of U.S. Copyright Registration No. TX 8-889-852 for the 2008 FOPT Manual, a true and accurate copy of which is attached as Exhibit B.

16. These copyright registrations are valid, subsisting and in full force and effect for all purposes.  Together, the works covered by these Registrations are referred to as the "Copyrighted Works".

17. Balmert has taken appropriate measures to protect its copyrights and to place the public on notice of its proprietary rights.

18. Balmert has never authorized Phillips 66 or any of its employees or agents to copy or reproduce the Copyrighted Works or any part or portion of the Copyrighted Works or any other Balmert product.

**Balmert, Furgang, and Phillips 66**

19. Phillips 66 is a longstanding client of Balmert's Safety Leadership programs.  Indeed, since 2005 Balmert has conducted over 275 of Mr. Balmert's copyrighted training courses for ConocoPhillips and Phillips 66 employees.  Balmert is well-known to many Phillips 66 executives and employees.

**Complaint**
**Against Phillips 66**

20. During this relationship with Phillips 66, Mr. Balmert came to know Mr. Stuart Furgang. On information and belief, Mr. Furgang was employed by Phillips 66 beginning on or about July 2011, and was the learning and development manager ("L&D Manager") for Phillips 66 when he left.  Mr. Furgang's LinkedIn page described his role at Phillips 66 as:

> [m]anage learning for 13 refinery system with locations in the US and Europe. Seek to raise learning effectiveness, implement video enhanced CBT, conduct competence assessment / development / assurance, and oversee supervisor development.

21.  As an example of Balmert's relationship with Mr. Furgang, in 2012, Mr. Furgang interviewed Balmert as a potential vendor for developing a Supervisory Leadership Program for Phillips 66.

22. Mr. Furgang described his view of the relationship between Philipps 66 and Balmert concerning the Supervisory Leadership Program in an email to Balmert's business development head, a portion of which is reprinted below.

There are opportunities for linkages in the new FLS course to concepts we have acquired from Balmert.  For example, Block 1 in situational leadership is about giving clear direction to a novice and we could say, this is a great opportunity for using a "stump speech," as you learned in Balmert's Safety Leadership.  Again, these are only linkages to what you have taught us; we still need Safety Leadership classes presented by Balmert to maintain and grow our awareness and use of your expertise.

So, after re-reading your note, I select Option #2.  That is, let's have a conversation about the path forward and see how we can achieve what we both want -- a workforce doing a little bit more, a little bit better.

23. In response, Balmert's business development head emailed Mr. Furgang reiterating Balmert's requirement to properly integrate Balmert's "copyrighted intellectual property into [Phillips 66's] overall leadership project."  That email is reproduced below.

**Complaint**
**Against Phillips 66**

**From:** V. Scott Pignolet [vspignolet@balmert.com]
**Sent:** Wednesday, September 12, 2012 04:14 PM Central Standard Time
**To:** Furgang, Stuart R (P66)
**Cc:** Paul Balmert
**Subject:** [EXTERNAL]Re: Phillip 66 Leadership Development

Stu,

Thank you for your note updating us on the leadership project. While we believe we have unique, very practical and very effective management and leadership content and the experience and size to help with a project like this, we can understand your decision. We are flattered that you considered Balmert Consulting for the leadership project and value the relationships we have developed across Phillips 66. We will look forward to continuing our part to advance safety leadership within Phillips 66 and support linkage to the leadership project.

As I said, we value our relationship and are always more than happy to share with Phillips 66 what we've learned from over ten years of standing in front of rooms full front line supervisors and managers all the way up to presidents of companies. As for step #2 I would suggest that the most effective approach for both sides is to do so in a way and at a time that members of both teams can participate with their ideas, questions and contributions. We can discuss when and how at your convenience.

And a final note, we also are very keen to support the proper integration of our copyrighted intellectual property into the overall leadership project. It is always very important, beyond proper credit and acknowledgement of ownership, that what we teach not get lost in translation and that the methods and their effectiveness be retained.

Look forward to continuing our discussions.

Best regards,

V. Scott Pignolet
Vice President
Balmert Consulting
███████████████
Kingwood, Texas 77339

24. In the end, Balmert granted Phillips 66 a license to Balmert's *copyrighted Managing Safety Performance* programs limited "to use as part of Phillips 66 Company Refining and Marketing division Supervisor Leadership Project solely for reviewing and reinforcing the tools and concepts taught in Balmert Consulting's Managing Safety Performance courses to Phillips 66 supervisors and managers."  *See* Exhibit C.

25. Stuart Furgang signed the limited license on behalf of Phillips 66.  In the agreement, Mr. Furgang and Phillips 66 agreed that any use of the "Authored Work shall include a minimum of one visible acknowledgment of ownership on each page, or equivalent in the form of, 'Copyright 2013 Paul D. Balmert – Balmert Consulting – All Rights Reserved.'"

Complaint
Against Phillips 66

26. Thus, well prior to 2018, Mr. Furgang and Phillips 66 knew Mr. Balmert, knew he had copyrighted training courses, and knew that he jealously protected his proprietary and copyrighted materials including the Copyrighted Works.

**Phillips 66, Furgang, and Donovan Steal Mr. Balmert's Copyrighted FOPT Manual**

27. In 2018, a business associate of Mr. Balmert provided him with a presentation slide deck entitled *Console Operator Process Troubleshooting 101* bearing a Phillips 66 logo.  A copy of the cover page to the presentation is reproduced below (hereafter, "Infringing Presentation").  A complete copy of the Infringing Presentation is attached as Exhibit D.



28. On information and belief, the Infringing Presentation was provided to Mr. Balmert's business associate by Stuart Furgang.

29. On information and belief, Mr. Furgang provided the Infringing presentation to others. This allegation likely will have evidentiary support after a reasonable opportunity for further investigation or discovery.

30. The ownership data for the Infringing Presentation identifies "Furgang, Stu" as the person who last modified the Infringing Presentation, and identifies "Donovan, Je" as the author of the Infringing Presentation.  A true and correct copy of the "Info" page from the native version of the Infringing Presentation is reproduced below.



**Complaint**
**Against Phillips 66**

31. On information and belief, "Donovan, Je" refers to Jeremy Donovan.  Mr. Donovan's LinkedIn page identified him as an "operations training coordinator at ConocoPhillips."

32. On information and belief, Mr. Donovan works at Phillip 66's Lake Charles, LA Refinery.

33. Mr. Balmert's business associate immediately recognized the contents of the Infringing Presentation as originating from Mr. Balmert's copyrighted FOPT Manuals.  Because of that recognition and because he knew Mr. Balmert was serious about protecting his intellectual property, he provided the Infringing Presentation to Mr. Balmert.

34. Comparing the Infringing Presentation to the 2003 FOPT Manual and/or to the 2008 FOPT Manual reveals wholesale and mostly verbatim copying by Phillips 66 of Mr. Balmert's Copyrighted Works.

35. Most aggravating for Mr. Balmert is Phillips 66's adoption as its own creation of the REACT troubleshooting model created and authored by Mr. Balmert.  Phillips 66 appropriated not only the REACT concept but also the unique way Mr. Balmert chose to express the concept. Without limitation, comparing the "REACT Troubleshooting Method" (slide 13 from the P66 Presentation) with page 40 of Mr. Balmert's 2008 FOPT Manual vividly illustrates the improper copying by Phillips 66's of Mr. Balmert's work.  A highlighted copy of the 2008 FOPT Manual is attached as Exhibit E.



36. Beyond appropriating Mr. Balmert's REACT model as its own, and without limiting or waiving Balmert's rights to demonstrate at trial other and further violations by Phillips 66, page 17 from the 2008 FOPT Manual has been highlighted and annotated to show examples of verbatim copying by Phillips 66.  Slides 8, 9 and 10 from the Infringing Presentation are overlaid.

FUNDAMENTALS OF PROCESS TROUBLESHOOTING

response to an abnormal situation – feeds, flows, temperatures, pressures – requires an understanding of cause before a new set of variables gets introduced into the operation.

There is no substitute for knowledge about the operation and equipment. But it takes more than process knowledge, as some of the worst episodes in troubleshooting involved people who knew the most about the equipment and the process. Effective troubleshooting requires a process, and the discipline to follow it.

## Enumerate the Potential Causes

O
po
op

St



### TROUBLESHOOTING

There is no substitute for knowledge about the operation and equipment. But it takes more than process knowledge, as some of the worst episodes in troubleshooting involved people who knew the most about the equipment and the process.

**Effective troubleshooting requires a process, _and_ the discipline to follow it.**

There are situations where there probably isn't much harm in trying the obvious first choice without considering any other possibility. Putting the charger on the dead battery is one case there isn't a high cost associated with guessing wrong. You're only out time.

But consider this: in a process operation, wasting time trying an ill-considered solution risks creating bigger problems – losing production, compounding the problem, or losing precious time that allows the problem to escalate.

Complaint
Against Phillips 66

F U N D A M E N T A L

response t...
understan...

There is n...
more than...
people w...
troublesho...

## Enume...

Once the a...
potential...
operator fi...

Starting at...

- As...
- As...
- Ask a neurologist, you will likely get one hundred potential causes.

The more someone knows about the subject, the more explanations – potential causes – they are capable of identifying.

Spending the time thinking about what causes might explain the abnormal situation is a phase in the process that is tempting to shortcut.

Experienced and well-trained operators are capable of diagnosing the majority of all the possible causes of an operating problem. Yet, troubleshooting by knowledgeable staff often fails because the initial diagnosis is wrong; the solution doesn't work because it doesn't fit the cause.

Many of the biggest failures in troubleshooting occurred because knowledgeable staff didn't consider "other possibilities". The reasons why aren't hard to figure:

- Taking action based on training or prior experience without fully understanding the situation.
- Choosing the obvious solution without recognizing all the factors in play.
- Going with the most obvious cause out of a desire to solve the problem quickly.

There are situations where there probably isn't much harm in trying the obvious first choice without considering any other possibility. Putting the charger on the dead battery is one case there isn't a high cost associated with guessing wrong. You're only out time.

But consider this: in a process operation, wasting time trying an ill-considered solution risks creating bigger problems – losing production, compounding the problem, or losing precious time that allows the problem to escalate.



## TROUBLESHOOTING

The more someone knows about the subject, the more explanations and potential causes they are capable of identifying. Spending time thinking about what causes might explain the abnormal situation is a phase in the process that is tempting to shortcut.

Experienced and well-trained operators are capable of diagnosing the majority of all the possible causes of an operating problem.

Yet, troubleshooting by knowledgeable staff often fails because the initial diagnosis is wrong; the solution doesn't work because it doesn't fit the cause.

Tunnel Vision

Copyright 2008 Paul D. Balmert

17

**Complaint**
**Against Phillips 66**

response to an abnormal situation – feeds, flows, temperatures, pressures – requires an u...

T...
m...
p...
tr...

E...

O...
p...
o...

St...

## TROUBLESHOOTING



In fact, many of the biggest failures in troubleshooting occurred because knowledgeable staff didn't consider "other possibilities". Below are the reasons why:

- Taking action based on training or prior experience without fully understanding the situation.
- Choosing the obvious solution without recognizing all the factors in play.
- Going with the most obvious cause out of desire to solve the problem quickly.



T...
th...

Sp...
pl...

E...
p...
often fails because the initial diagnosis is wrong; the solution doesn't work because it doesn't fit the cause.

Many of the biggest failures in troubleshooting occurred because knowledgeable staff didn't consider "other possibilities". The reasons why aren't hard to figure:

- Taking action based on training or prior experience without fully understanding the situation.
- Choosing the obvious solution without recognizing all the factors in play.
- Going with the most obvious cause out of a desire to solve the problem quickly.

There are situations where there probably isn't much harm in trying the obvious first choice without considering any other possibility. Putting the charger on the dead battery is one case there isn't a high cost associated with guessing wrong. You're only out time.

But consider this: in a process operation, wasting time trying an ill-considered solution risks creating bigger problems – losing production, compounding the problem, or losing precious time that allows the problem to escalate.

Complaint
Against Phillips 66

37. Without limitation to or waiver of Balmert's rights to demonstrate other and further infringements to the jury, the following Infringing Presentation slides, identified by slide number, infringe one or both of the Copyrighted Works:

| Infringing Presentation Slide No. | Infringing Presentation Slide No. |
|---|---|
| 2 | 19 |
| 4 | 20 |
| 8 | 21 |
| 9 | 22 |
| 10 | 23 |
| 11 | 25 |
| 12 | 26 |
| 13 | 27 |
| 14 | 28 |
| 15 | 29 |
| 16 | 30 |
| 18 | 31 |

38. On information and belief, Phillips 66 published, caused to be published and/or allowed to be published to one or more of its employees at one or more of its refineries, such as, but not limited to, the Alliance refinery in Belle Chasse, LA, all or part of the Infringing Presentation. This allegation likely will have evidentiary support after a reasonable opportunity for further investigation or discovery.

39. On information and belief, Phillips 66 caused, allowed, and/or encouraged one or more of its employees to store the Infringing Presentation on one more computer or network servers accessible by Phillips 66 employees in the United States and abroad. This allegation likely will have evidentiary support after a reasonable opportunity for further investigation or discovery.

40. On information and belief, one or more of Phillips 66 employees, agents and contractors accessed, downloaded and/or otherwise copied the Infringing Presentation from Phillips 66's servers.  This allegation likely will have evidentiary support after a reasonable opportunity for further investigation or discovery.

## COUNT I
## COPYRIGHT INFRINGEMENT
### (Federal Copyright Infringement - 17 U.S.C. § 501 *et seq.*)

41. Balmert alleges and hereby incorporates by reference the foregoing paragraphs.

42. Mr. Balmert is the sole owner of all right, title, and interest to the Copyrighted Works and of all corresponding copyrights and Certificates of Registration.

43. As a copyright holder pertaining to the Copyrighted Works, Mr. Balmert has the exclusive right, subject to certain limitations, to reproduce the work, prepare derivative works, and distribute copies of the work. 17 U.S.C. § 106(1)-6). "Anyone who violates any of the exclusive rights of the copyright owner ... is an infringer of the copyright." 17 U.S.C. § 501(a).

44. The Copyrighted Works consist of material original to Mr. Balmert and each is copyrightable subject matter.

45. Phillips 66 had access to and reproduced, distributed, adapted, and/or publicly displayed copies of the Copyrighted Works for financial gain and without Balmert's approval or authorization, in violation of Balmert's copyrights.

46. Phillips 66 incorporated identical portions of the Copyrighted Works into other works for financial and/or commercial gain and without Balmert's approval or authorization, in violation of Balmert's copyrights.

47. Phillips 66 created derivative works of Balmert's Copyrighted Works for financial and/or commercial gain and without Balmert's approval or authorization, in violation of Balmert's copyrights.

48. Phillips 66 has copied, distributed, reproduced, adapted, made derivative works of, publicly displayed, and otherwise exploited Balmert's Copyrighted Works without the consent or authority of Balmert, thereby directly infringing the Copyrighted Works.

49. Phillips 66's conduct constitutes infringement of the Copyrighted Works and exclusive rights under copyright in violation of 17 U.S.C. § 501 et seq.

50. The infringement of the Copyrighted Works in and to each of the Copyrighted Works constitutes a separate and distinct act of infringement.

51. The acts of infringement by Phillips 66 have been willful, intentional, and purposeful, in reckless disregard of and with indifference to the rights of Balmert.

52. As a direct and proximate result of the Phillips 66's actions, Balmert has suffered economic and other damages for which Balmert now sues.

53. Pursuant to 17 U.S.C. § 504(b), Balmert is entitled to recover its actual damages and all profit Phillips 66 has made because of its wrongful conduct.

54. Pursuant to 17 U.S.C. § 505, Balmert requests an award of its full attorney fees and costs.

55. Balmert is further entitled to injunctive relief and an order compelling the impounding of all infringing materials. Balmert has no adequate remedy at law for Phillips 66's wrongful conduct because, among other things: (a) Balmert's copyrights are unique and valuable property that have no readily determinable market value; (b) Phillips 66's infringement harms Balmert such that Balmert could not be made whole by any monetary award; (c) Phillips 66's wrongful conduct, and the resulting harm to Balmert, is continuing.

## COUNT II
## VICARIOUS COPYRIGHT INFRINGEMENT
### (17 U.S.C. § 501 *et seq.*)

56.  Balmert alleges and hereby incorporates by reference the foregoing paragraphs.

57.  Several individuals and entities have and are directly infringing Balmert's Copyrighted Works, including Phillips 66, and one or more of its employees and/or agents.

58.  Phillips 66 had the right and ability to control the infringing acts of its employees and agents who directly infringed Balmert's Copyrighted Works.

59.  Phillips 66 obtained a direct financial and/or commercial benefit from the infringing activities of its employees and agents who directly infringed Balmert's Copyrighted Works.

60.  The acts and conduct of Phillips 66, as alleged above, constitute vicarious copyright infringement.

61.  The acts of infringement by Phillips 66 have been willful, intentional, and purposeful, in reckless disregard of and with indifference to the rights of Balmert.

62.  As a direct and proximate result of the Phillips 66's actions, Balmert has suffered economic and other damages for which Balmert now sues.

63.  Pursuant to 17 U.S.C. § 504(b), Balmert is entitled to recover its actual damages and all profits Phillips 66 has made because of its wrongful conduct.

64.  Pursuant to 17 U.S.C. § 505, Balmert requests an award of its full attorney fees and costs.

65.  Balmert is further entitled to injunctive relief and an order compelling the impounding of all infringing materials. Balmert has no adequate remedy at law for Phillips 66's wrongful conduct because, among other things: (a) Balmert's copyrights are unique and valuable property that have no readily determinable market value; (b) Phillips 66's infringement harms Balmert such that

Balmert could not be made whole by any monetary award; (c) Phillips 66's wrongful conduct, and the resulting harm to Balmert, is continuing.

## COUNT III
## VIOLATION OF DMCA)
## (17 U.S.C. § 1201 *et seq.*)

66. Balmert alleges and hereby incorporates by reference the allegation made in the foregoing paragraphs.

67. Section 1202(c) of Title 17 defines copyright management information ("CMI") to include "the title and other information identifying the work, including the information set forth on a notice of copyright" as well as "[t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright."

68. Section § 1202(b) of Title 17 prohibits any person without the authority of the copyright holder from (1) intentionally removing CMI, or (2) distributing products knowing that CMI has been removed or (3) distributing products knowing that CMI has been removed and having reasonable grounds to believe that the removal will induce infringement.

69. Phillips 66 violated § 1202(b) when it and/or its employees and agents removed Balmert's CMI and/or distributed unauthorized copies of those materials knowing that the CMI had been removed without Balmert's authority, and/or distributed unauthorized copies of those materials knowing that the CMI had been removed without Balmert's authority and having reasonable grounds to know that such distribution would induce, enable, facilitate or conceal an infringement.

70. When Phillips 66 intentionally removed Balmert's CMI and/or distributed Balmert's materials with the CMI altered or removed, Phillips 66 had reasonable grounds to believe that the removal/distribution would induce and enable infringement; in fact, such intentional conduct did in fact result in direct infringement of Balmert's intellectual property rights.

71. Phillips 66's conduct has been willful and intentionally done with full knowledge of Balmert's copyright ownership and in conscious disregard of Balmert's rights.

72. As a direct and proximate result of the Phillips 66's actions, Balmert has suffered damages.

73. Pursuant to 17 U.S.C. § 1203(c)(3), Balmert is entitled to its actual economic and other damages resulting from Phillips 66's violations, together with the profits it earned.

74. Alternatively, pursuant to the DMCA § 1203(c)(3), Balmert is entitled to statutory damages in the sum of not less than $ 2,500 or more than $ 25,000 for each violation of §1202(b).

75. Pursuant to 17 U.S.C. § 1203(b)(5), Balmert requests an award of its full attorney fees and costs.

## REQUEST TO IMPOUND AND DESTROY ALL INFRINGING COPIES

76. Balmert alleges and hereby incorporates by reference the allegations made in the foregoing paragraphs of this Complaint.

77. Pursuant to 17 U.S.C. §503(a)(1)(a) and 17 U.S.C. §1203(b)(2), Balmert requests that the Court order the impounding, on such terms as it deems reasonable, of any unauthorized copy of the Copyrighted Work that is in the custody or control of Phillips 66.

78. Upon and as part of a final judgment in this matter, Balmert requests that the Court order the destruction of any unauthorized copy of or derivation of the Copyrighted Work involved in any violation of Balmert's copyright protection rights and that are in the custody or control of Phillips 66 or that have been impounded. 17 U.S.C. §503(b), 17 U.S.C. §1203(b)(6).

## REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION

79. Balmert alleges and hereby incorporates by reference the allegations made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

80. Upon information and belief, Phillips 66, unless enjoined, will continue to infringe Balmert's Copyrighted Works as described in this Complaint. These acts violate the Copyright Act.

81. These actions entitle Balmert to a preliminary injunction and, upon hearing, permanent injunction enjoining Phillips 66 and its officers, agents, servants, employees, users, and attorneys, and all those persons in active concert or in participation with them from:

(a)  Any unauthorized use of the Copyrighted Works, including reproducing, distributing, adapting, and/or publicly displaying the Copyrighted Works in an unauthorized manner;

Complaint
Against Phillips 66

(b) Representing that Phillips 66's unauthorized products incorporating and/or altering part or all of Balmert's Copyrighted Works or any other materials created by Phillips 66 are in any way sponsored by, approved by, affiliated with, or originated by Balmert;

(c) Otherwise infringing any rights of Balmert; and

(d) Otherwise competing unfairly with Balmert or injuring its business reputation in any manner.

82. For these actions, there is no adequate remedy at law. Further, Balmert is substantially likely to prevail on the merits of these claims. The injury to Balmert greatly outweighs any injury to Phillips 66 that the requested injunction may cause. The balance of hardships tips strongly in favor of Balmert. Finally, the injunction will not disserve the public interest. Therefore, Balmert is entitled to preliminary and permanent injunctive relief against Phillips 66.


### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Balmert, Inc. prays that Phillips 66 be cited to appear and answer and that after a hearing, the Court grant the following relief:

(i) Order the impoundment pursuant to 17 U.S.C. §§ 503 and 509(a) of all infringing copies of the Copyrighted Works;

(ii) In accordance with 17 U.S.C. § 502 and 15 U.S.C. § 1116, issue a preliminary and permanent injunction enjoining Phillips 66 and its officers, agents, servants, employees, users, if any, and attorneys, and all those persons in active concert or participation with Phillips 66 from the acts described in this Complaint;

(iii) Order Phillips 66 to provide an accounting of all infringements, worldwide, by Phillips 66, its employees and agents of the Copyrighted Works;

(iv)   Order Phillips 66 to provide an accounting of all financial and/or commercial gain by Phillips 66 of the Copyrighted Works in accordance with 17 U.S.C. § 504(b);

(iv)   Enter judgment against Phillips 66 for Balmert's actual damages and Phillips 66's profits under the Copyright Act (17 U.S.C. § 504(b);

(v)    Enter judgment against Phillips 66 for statutory damages under the DMCA (17 U.S.C. § 1203(c)(3));

(vi)   Order the destruction of any unauthorized copy of the Copyright Works that are in the custody or control of Phillips 66 or that have been impounded. 17 U.S.C. §503(b), 17 U.S.C. §1203(b)(6);

(vii)  In accordance with 15 U.S.C. § 1117(a), find this case to be exceptional;

(viii)  In accordance with 15 U.S.C. § 1117(a), 17 U.S.C. § 505, and 17 U.S.C. § 1203(b)(5), award Balmert its reasonable attorney fees, costs, and expenses of this action;

(ix)   Replevy of Balmert's property as described above;

(x)    Pre-judgment and post-judgment interest as provided by law; and

(xi)   Such other and further relief at law or in equity as Balmert may be justly entitled.


## DEMAND FOR TRIAL BY JURY

Balmert demands a trial by jury on its claims against Phillips 66.

**Complaint
Against Phillips 66**

Dated: February 25, 2020

/s/Al Deaver
Albert B. Deaver, Jr.
Attorney-in-charge
Texas State Bar No. 05703800
S.D. Tex. ID No. 11300
adeaver@md-iplaw.com
(281) 460-2315
Robert J. McAughan, Jr.
Texas State Bar No. 00786096
S.D. Tex. ID No.
bmcaughan@md-iplaw.com
(713) 829-3851
MCAUGHAN DEAVER PLLC
550 Westcott St.
Suite 375
Houston, TX 77007

*Attorneys for Plaintiffs Paul D. Balmert and Balmert Consulting, LLC.*

Attachments:

A:  Copyright Registration TX 8-889-183
B:  Copyright Registration TX 8-889-852
C:  Limited Licensing Agreement, Supervisor Leadership Project
D:  *Console Operator Process Troubleshooting 101*
E:  *The Fundamentals of Process Troubleshooting* (2008) (Annotated)